UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROOK NY RESIDENTIAL LLC,<br><br>Plaintiff,<br><br>- against -<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>Defendant. | Civil Action No.: 7:24-cv-05623-NSR<br><br>**ANSWER AND SEPARATE DEFENSES OF DEFENDANT LIBERTY MUTUAL FIRE INSURANCE COMPANY** |

Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual"), by and through its undersigned attorneys, Finazzo Cossolini O'Leary Meola & Hager LLC, by way of Answer to the Complaint of Plaintiff Brook NY Residential LLC, states as follows:

**NATURE OF THE ACTION**

1. Paragraph 1 of the Complaint contains a description of Plaintiff's legal theories and the relief it seeks rather than allegations of fact to which a response by Liberty Mutual is required. To the extent that Paragraph 1 may be deemed to contain any allegations of fact, Liberty Mutual denies those allegations.

2. Liberty Mutual denies the allegations contained in Paragraph 2 of the Complaint, except admits that, on April 25, 2023, Plaintiff notified Liberty Mutual of a claim for loss or damage purportedly occurring on July 26, 2022 at the property located at 589 Fulton St., Brooklyn NY 11201 (the "Property"), under Policy No. MK2-L9L-474342-012, issued by Liberty Mutual to Plaintiff for the period of April 20, 2022 to July 11, 2025 (the "Policy"), and that Liberty Mutual assigned Claim Number 23842261 to that claim (the "Claim"). Liberty Mutual further admits that it has paid no moneys in connection with the Claim inasmuch as no coverage afforded for the Claim under the Policy.

3. Liberty Mutual denies the allegations contained in Paragraph 3 of the Complaint.

## JURISDICTION

4. Liberty Mutual admits, for jurisdictional purposes only, the allegations contained in Paragraph 4 of the Complaint.

5. Liberty Mutual denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Complaint.

6. Liberty Mutual denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of the Complaint.

7. Liberty Mutual denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint.

8. Liberty Mutual denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint.

9. Liberty Mutual denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint.

10. Liberty Mutual denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint.

11. Liberty Mutual denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint.

12. Liberty Mutual denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint.

13. Liberty Mutual denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint.

14. Liberty Mutual denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 14 of the Complaint.

15. Liberty Mutual denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint.

16. Liberty Mutual admits that it is a corporation organized under the laws of the State of Wisconsin with its principal offices located at 175 Berkeley Street, Boston, Massachusetts, 02116.

## VENUE

17. Liberty Mutual admits the allegations contained in Paragraph 17 of the Complaint.

18. Liberty Mutual admits the allegations contained in Paragraph 18 of the Complaint.

## BACKGROUND FACTS

19. Liberty Mutual admits, upon information and belief, the allegations contained in Paragraph 19 of the Complaint.

20. Liberty Mutual admits the allegations contained in Paragraph 20 of the Complaint.

21. Liberty Mutual denies the allegations contained in Paragraph 21 of the Complaint, except admits that it issued the Policy for the period of April 20, 2022 to July 11, 2025, and that subject to its terms, conditions, limits, limitations, and exclusions, the Policy provided coverage for direct physical loss or damage to covered property caused by a covered cause of loss while such covered property is at the project site, in transit, or at a temporary offsite location. Liberty Mutual further admits that the "Project Site," as that term is used in the Policy, was the Property located at 589 Fulton St, Brooklyn, New York, 11201. Liberty Mutual refers the Court to the Policy for all of its terms, conditions, limits, limitations, and exclusions, and any effect thereof.

22. Liberty Mutual denies the allegations contained in Paragraph 22 of the Complaint, except admits that subject to its terms, conditions, limits, limitations, and exclusions, the Policy

provided coverage for direct physical loss or damage to covered property caused by a covered cause of loss while such covered property is at the project site, in transit, or at a temporary offsite location. Liberty Mutual refers the Court to the Policy for all of its terms, conditions, limits, limitations, and exclusions, and any effect thereof.

23. Liberty Mutual admits that Policy contained an endorsement titled "Time Element Coverage." Liberty Mutual refers the Court to the Policy for all of its terms, conditions, limits, limitations, and exclusions, and any effect thereof.

24. Liberty Mutual denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the Complaint.

25. Liberty Mutual denies the allegations contained in Paragraph 25 of the Complaint, except admits that, subject to its terms, conditions, limits, limitations, and exclusions, the Policy's Time Element Coverage endorsement provides time element coverage for "Soft Costs" and loss of "Income" and/or "Rental Value" where there are delays to the completion of the "Insured Project" which are caused by direct physical loss or damage to covered property caused by a covered cause of loss while such covered property is at the project site, in transit, or at a temporary offsite location. Liberty Mutual refers the Court to the Policy for all of its terms, conditions, limits, limitations, and exclusions, and any effect thereof.

26. Liberty Mutual admits that the Policy contains the language quoted in Paragraph 26 of the Complaint. Liberty Mutual refers the Court to the Policy for all of its terms, conditions, limits, limitations, and exclusions, and any effect thereof.

27. Liberty Mutual admits that the Policy contains the language quoted in Paragraph 27 of the Complaint. Liberty Mutual refers the Court to the Policy for all of its terms, conditions, limits, limitations, and exclusions, and any effect thereof.

28. Liberty Mutual admits that the Policy contains the language quoted in Paragraph 28 of the Complaint. Liberty Mutual refers the Court to the Policy for all of its terms, conditions, limits, limitations, and exclusions, and any effect thereof.

29. Liberty Mutual admits that the Policy contains the language quoted in Paragraph 29 of the Complaint. Liberty Mutual refers the Court to the Policy for all of its terms, conditions, limits, limitations, and exclusions, and any effect thereof.

30. Liberty Mutual admits that the Policy contains the language quoted in Paragraph 30 of the Complaint. Liberty Mutual refers the Court to the Policy for all of its terms, conditions, limits, limitations, and exclusions, and any effect thereof.

31. Liberty Mutual admits that the Policy contains the language quoted in Paragraph 31 of the Complaint. Liberty Mutual refers the Court to the Policy for all of its terms, conditions, limits, limitations, and exclusions, and any effect thereof.

32. Liberty Mutual admits that the Policy contains the language quoted in Paragraph 32 of the Complaint. Liberty Mutual refers the Court to the Policy for all of its terms, conditions, limits, limitations, and exclusions, and any effect thereof.

33. Liberty Mutual admits that the Policy contains the language quoted in Paragraph 33 of the Complaint. Liberty Mutual refers the Court to the Policy for all of its terms, conditions, limits, limitations, and exclusions, and any effect thereof.

34. Liberty Mutual admits that the Policy contains the language quoted in Paragraph 34 of the Complaint. Liberty Mutual refers the Court to the Policy for all of its terms, conditions, limits, limitations, and exclusions, and any effect thereof.

35. Liberty Mutual admits that the Policy contains the language quoted in Paragraph 35 of the Complaint. Liberty Mutual refers the Court to the Policy for all of its terms, conditions,

limits, limitations, and exclusions, and any effect thereof.

36. Liberty Mutual denies the allegations contained in Paragraph 36 of the Complaint.

37. Liberty Mutual denies the allegations contained in Paragraph 37 of the Complaint.

38. Liberty Mutual denies the allegations contained in Paragraph 38 of the Complaint.

39. Liberty Mutual denies the allegations contained in Paragraph 39 of the Complaint.

40. Liberty Mutual admits that it disclaimed coverage for the Claim by letter dated December 12, 2023. The December 12, 2023 denial letter, being a document in writing, speaks for itself.

41. Liberty Mutual admits that a "Sworn Statement in Proof of Loss" was submitted by Plaintiff, through its attorneys, on April 15, 2024. The "Sworn Statement in Proof of Loss", being a document in writing, speaks for itself.

42. Liberty Mutual admits that by correspondence dated April 18, 2024, it rejected Plaintiff's proof of loss, on the basis that there was no coverage for the Claim, and re-affirmed its coverage position as stated in its December 12, 2023 denial letter. Such communications, being documents in writing, speak for themselves.

43. Paragraph 43 of the Complaint contains conclusions of law to which no response is required. To the extent that Paragraph 43 may be deemed to contain any allegations of fact, Liberty Mutual denies those allegations.

44. Liberty Mutual denies the allegations contained in Paragraph 44 of the Complaint.

45. Liberty Mutual denies the allegations contained in Paragraph 45 of the Complaint.

## **AS AND FOR PLAINTIFF'S CLAIM AGAINST DEFENDANT**
**(Breach of Contract)**

46. Liberty Mutual repeats and reincorporates by reference its responses to Paragraphs 1 through 45 of the Complaint as if set forth at length herein.

47. Liberty Mutual denies the allegations contained in Paragraph 47 of the Complaint.

48. Liberty Mutual denies the allegations contained in Paragraph 48 of the Complaint.

49. Liberty Mutual denies the allegations contained in Paragraph 49 of the Complaint.

50. Liberty Mutual denies the allegations contained in Paragraph 50 of the Complaint.

51. Liberty Mutual denies the allegations contained in Paragraph 51 of the Complaint.

52. Liberty Mutual denies the allegations contained in Paragraph 52 of the Complaint.

## SEPARATE DEFENSES

### FIRST SEPARATE DEFENSE

The Complaint fails to state a claim against Liberty Mutual upon which relief may be granted.

### SECOND SEPARATE DEFENSE

1. The **BUILDER'S RISK COVERAGE FORM** (BR 00 01 01 19) of the Policy contains, among others, the following provisions:

   **A.** Coverage

   1. Subject to the Limits of Liability and Sub-Limits of Liability shown in the **Declarations** and all other Policy provisions, we will pay for direct physical loss or damage to **covered property** caused by a **covered cause of loss** while such **covered property** is:

      a. At the **project site**;

      b. In transit; or

      c. At a **temporary offsite location**.

               *     *     *

   **B.** Property Not Covered
               *     *     *

   1. Land and land values and the value of cut, fill and backfill materials existing at the location of the insured project prior to project commencement.

7

However, the following are covered to the extent identified in the contract documents and included in the **total project value**:

a. Fill and backfill materials purchased for use in the completion of the **insured project**; and

b. Labor and material charges incurred to excavate land and to move, remove, place or otherwise handle cut, fill and backfill materials, whether such materials are insured or uninsured.

\* \* \*

\* \* \*

6. **Existing real property**, except as provided under Section **E.**, Coverage Extensions, Damage to **Existing Real Property** from Construction Operations;

\* \* \*

**E.** Coverage Extensions

\* \* \*

6. Damage to **Existing Real Property** From Construction Operations

a. We will pay for direct physical loss or damage caused by a **covered cause of loss** to **existing real property** at a **project site.** Coverage for such **existing real property** applies when:

(1) The **insured project i**s contained within or is attached to the **existing real property**;

(2) The **existing real property** is not part of your **insured project**; and

(3) The loss or damage to the **existing real property** must be directly cause

\* \* \*

**F.** Described Catastrophe Causes of Loss

1. **Earth Movement**

a. We will pay for direct physical loss or damage to **covered property**, including resulting Time Element loss, if Time Element coverage is endorsed to this Policy, caused by or resulting from **earth movement**.

b.  **Earth movement** means earthquake, landslide, subsidence or earth sinking (other than **sinkhole collapse**), rising or shifting of the earth, avalanche, whether natural or man-made, or volcanic eruption; regardless of any other cause or event contributing concurrently or in any other sequence of loss.

However, physical loss or damage, including resulting Time Element loss, if Time Element coverage is endorsed to this Policy, from fire, explosion, theft, sprinkler leakage, or **flood** caused by **earth movement** will not be considered to be loss by **earth movement** within the terms and conditions of this Policy.

2. The Policy's **BUILDER'S RISK DEFINITIONS** form (BR 08 01 01 19) of the Policy contains, among others, the following provisions:

10. **Covered cause of loss** means direct physical loss or damage, not otherwise excluded or limited in this Policy, which occurs during the Policy Term.

    **Covered cause of loss** does not mean: direct physical loss or damage which occurred prior to the Policy Term, regardless of the date on which it first becomes manifest or is first discovered.

11. **Covered property** means:

    a. **Property under construction**;

    \*   \*   \*

    d. Property that is insured for loss or damage under the applicable Coverage Forms or endorsements of this Policy;

    Owned by the Insured or owned by others which are in the Insured's care, custody and control, or for which the Insured is contractually liable and are included in the **insured project**.

    \*   \*   \*

17. **Existing real property** means buildings or permanent structures, including equipment and apparatus used to maintain or service the buildings or structures that existed at the **project site** prior to the beginning of the **insured project.**

    \*   \*   \*

36. **Project site** means the location of the **insured project** as shown on the **Declarations**, or if the Master Builder's Risk Reporting Form and Premium

Adjustment endorsement is attached to this Policy, the location of the **insured project** as shown on the **reporting form**.

**37. Property under construction** means:

    **a.** Materials and supplies;

    **b.** Fill, backfill or fill additives;

    **c.** Equipment and machinery;

    **d.** Furniture and fixtures;

    **e.** **Electronic hardware** and software; and

    **f.** Other property as included in the written construction contract;

That is intended to become a permanent part of the **insured project**.

**Property under construction** does not mean **spare construction materials** or **existing real property**.

3.    The **TIME ELEMENT COVERAGE** endorsement (form BR 03 07 01 19) of the Policy contains, among others, the following provisions:

This endorsement modifies insurance provided under the following:

BUILDER'S RISK COVERAGE FORM
COMMERCIAL INLAND MARINE CONDITIONS

**A.** Coverage

    **1.** With respect to the coverage provided by this endorsement:

        **a.** The words you or your refer only to the Named Insured shown in the Time Element Supplemental Declarations;

        **b.** Section **5.** ADDITIONAL INSUREDS of the **Declarations** does not apply.

    **2.** The following Time Element Coverages are added to Section **A.**, Coverage, of the Builder's Risk Coverage Form:

Coverage is provided as described below for one or more of the following Time Element Coverages if a corresponding Sub-Limit of Liability is shown

in the Time Element Supplemental Declarations.

    a. **Soft Costs**

We will pay for the actual and necessary **soft costs** you incur due to the delay in completion of the **insured project** during the **period of delay**. This delay in completion must be caused by direct physical loss or damage to **covered property** at the **project site**, in transit, or at a **temporary offsite location**. The loss or damage must be caused by a **covered cause of loss**.

    b. **Income** and/or **Rental Value** Coverage.

We will pay the actual loss of **income** and/or **rental value:**

    **(1)** You incur due to the delay in completion of the **insured project** during the **period of delay;** and/or

    **(2)** You sustain due to the partial or complete cessation of your business activities during the **restoration period** in that part of the **insured project** which, at the time of loss or damage, has become **occupied property**.

Such delay in completion or cessation of business activities must be caused by direct physical loss or damage to **covered property** at the **project site**, in transit, or at a **temporary offsite location.** The loss or damage must be caused by a **covered cause of loss**.

4.     The **PREMIER PROTECTOR – BUILDER'S RISK™ DECLARATIONS** (BR 07 10 01 19) of the Policy contains, among others, the following provisions:

**10. LIMITS OF LIABILITY**

    \*    \*    \*

    b. Sub-Limits of Liability All Sub-Limits of Liability are included in, and not in addition to, the Project Limit of Liability. Coverage will only apply when a dollar amount is entered below. If 'NCP' is shown under the Sub-Limits of Liability for any coverage then no coverage is provided for that coverage.

5.     The **BUILDER'S RISK COVERAGE EXTENSIONS SUPPLEMENTAL DECLARATIONS** (form BR 07 02 01 19) provides in pertinent part:

This Supplemental Declarations provides information to be used with the Builder's

11

Risk Coverage Form and section **10.b.(4)** of the Premier Protector – Builder's Risk™ Declarations or section **8.b.(3)** of the Premier Protector – Builder's Risk™ Master Declarations. It is subject to all of the terms, conditions, limitations, **Declarations** and provisions of the Policy to which this Supplemental Declarations is attached.

| Coverage Extension | Sub-Limits of Liability |
|---|---|

\* \* \*

| Damage to **Existing Real Property** From Construction Operations | NCP |
|---|---|

6. Coverage under the Time Element Coverage endorsement requires direct physical loss or damage to "covered property" at the project site, in transit, or at a temporary offsite location which is the result of a "covered cause of loss." Plaintiff has failed to allege a delay to the insured project resulting from direct physical damage to covered property occurring at the project site, in transit, or at a temporary location.

7. To the extent that Plaintiff alleges that a covered cause of loss occurred when soil within the Project Site began to shift, settle, subside, sink and move, this cause of loss does not fall within the meaning of the Policy's Earth Movement coverage because such cause of loss is only covered where it causes direct physical loss or damage to "covered property."

8. To the extent that Plaintiff contends that alleged shifting, settlement, subsidence, sinking or movement the soil at Property caused damage to the land or land values or the value of cut, fill and backfill materials existing at the Property prior to project commencement, provision B.1 of the **BUILDER'S RISK COVERAGE FORM** makes clear that such property is not covered under the Policy.

9. Based upon Liberty Mutual's investigation, the only identifiable physical loss or damage at or nearby the project site was damage to a pre-existing subway station which was

12

located on a parcel adjacent to the location identified in the Policy at the project site.

10. To the extent that Plaintiff may assert that damage to the pre-existing subway station constituted "Existing Real Property," as that term is defined in the Policy, the Policy's **BUILDER'S RISK COVERAGE EXTENSIONS SUPPLEMENTAL DECLARATIONS** made clear that there was no coverage for this variety of property, because "NCP" appears next to that coverage.

11. There is no coverage available under the Policy for Plaintiff's Claim because there was no direct physical loss or damage to any covered property caused by a covered loss, as defined under the terms, conditions, and limitations of the Policy.

## THIRD SEPARATE DEFENSE

1. The **BUILDER'S RISK COVERAGE FORM** (BR 00 01 01 19) of the Policy contains, among others, the following provisions:

    C. Exclusions

    1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage, even if such other cause or event would otherwise be covered. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

        * * *

        c. Ordinance or Law

            (1) The enforcement of or compliance with any ordinance or law:

                (a) Regulating the construction, use or repair of any property; or

                (b) Requiring the tearing down of any property, including the cost of removing its debris.

            (2) This exclusion applies whether the loss or damage results from:

13

      **(a)** An ordinance or law that is enforced even if the property has not been damaged; or

      **(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   This exclusion applies, except as provided under Section **E.**, Coverage Extensions, Ordinance or Law.

2.      To the extent Plaintiff's claim involves loss or damage caused or resulting from by the enforcement of or compliance with any ordinance or law, there would be no coverage available under the Policy for Plaintiff's claim in the absence of a valid exception, which is not present here.

## **FOURTH SEPARATE DEFENSE**

1.      The **BUILDER'S RISK COVERAGE FORM** (BR 00 01 01 19) of the Policy, further provides in pertinent part:

**C.** Exclusions

           \*     \*     \*

   **2.** We will not pay for:

      **a.** Consequential Loss

      Loss, damage, cost or expense caused by, resulting from, or attributable to any of the following:

      **(1)** Loss of market or loss of use;

      **(2)** Liquidated damages, performance penalties or penalties for non-completion, except as provided under Section **E.**, Coverage Extensions, Contract Penalties;

      **(3)** Non-compliance with contract conditions;

      **(4)** Delay in completion of construction, except as provided under Time Element coverage, if endorsed to this Policy; or

      **(5)** Re-sequencing or inefficiencies of construction activities.

2. To the extent Plaintiff's claim involves loss, damage, cost or expense caused by, resulting from, or otherwise attributable delays in completion of construction, or any of the other above-identified causes, there would be no coverage available under the Policy for Plaintiff's claim in the absence of a valid exception, which is not present here.

## FIFTH SEPARATE DEFENSE

1. The **BUILDER'S RISK COVERAGE FORM** (BR 00 01 01 19) of the Policy, further provides in pertinent part:

   **C.** Exclusions

   \* \* \*

   **2.** We will not pay for:

   \* \* \*

   **b.** Cracking and Settling

   Loss or damage caused by, resulting from or attributable to normal or expected subsidence, settling, cracking, expansion, contraction or shrinkage of walls, floors, ceilings, buildings, foundations, patios, walkways, driveways or pavements.

   But if loss or damage caused by a **covered cause of loss** results, we will pay for the resulting loss or damage caused by that **covered cause of loss**.

2. To the extent that Plaintiff's claim involves the loss or damage resulting or attributable normal or expected subsidence, settling, cracking, expansion, contraction or shrinkage of walls, floors, ceilings, buildings, foundations or pavements, there would be no coverage available under the Policy for Plaintiff's claim.

## SIXTH SEPARATE DEFENSE

1. The **BUILDER'S RISK COVERAGE FORM** (BR 00 01 01 19) of the Policy, as amended by the **FAULTY, INADEQUATE OR DEFECTIVE WORKMANSHIP OR**

15

**DESIGN EXCLUSION AMENDMENT** (form BR 04 01 01 19) endorsement of the Policy, contains, among others, the following provisions:

> **C.** Exclusions
>
> \* \* \*
>
> **2.** We will not pay for:
>
> \* \* \*
>
> **g.** Faulty, Inadequate or Defective Workmanship or Design
>
> Loss, damage, cost or expense caused by or resulting from faulty, inadequate or defective:
>
> **(1)** Planning, zoning, development, surveying, siting;
>
> **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction;
>
> **(3)** Materials used in repair, construction, renovation, remodeling, grading or compaction; or
>
> **(4)** Maintenance;
>
> Of part or all of any property on or off the **project site** described in the **Declarations** or **reporting form**.
>
> But if the faulty, inadequate or defective condition listed in paragraphs **g.(1)** through **g.(4)**, above, results in a **covered cause of loss**, we will pay for the direct physical loss or damage caused by that **covered cause of loss**, including such loss or damage to the original faulty, inadequate or defective **covered property**.
>
> However, in no event will we pay the costs or expense to improve or redesign the original materials, supplies, designs, plans or specifications or improve workmanship.
>
> The mere existence of any faulty, inadequate or defective condition listed in paragraph **g.(1)** through **g.(4)** above, is not direct physical loss or damage…

    2.      To the extent that Plaintiff's claim involves loss, damage, cost or expense caused

by or resulting from faulty, inadequate or defective planning, zoning, development, surveying, siting, design, specifications, workmanship, construction, grading, compaction, and/or materials used in construction, grading or compaction, there is no coverage under the Policy for Plaintiff's claim.

### SEVENTH SEPARATE DEFENSE

Coverage for the claim for which Plaintiff seeks indemnification is precluded by the applicable provisions, terms, definitions, conditions, limitations, and exclusions of the Policy.

### EIGHTH SEPARATE DEFENSE

Plaintiff's claims under the Policy are barred or diminished to the extent that any of the claims in the Complaint were the result of Plaintiff's failure to exercise reasonable care and diligence to mitigate the alleged damages.

### NINTH SEPARATE DEFENSE

To the extent that it is determined that any coverage exists under the Policy for Plaintiff's claims in this action, which Liberty Mutual denies, any such coverage would be subject to any and all deductibles, retained limits, retentions, self-insured retentions, Limits of Insurance, Loss Settlement, co-insurance and "other insurance" provisions as stated in the Policy.

### TENTH SEPARATE DEFENSE

Liberty Mutual has not breached any contractual, common law or statutory duty owed to Plaintiff.

### ELEVENTH SEPARATE DEFENSE

The Complaint does not describe Plaintiff's claims with sufficient particularity to allow Liberty Mutual to determine such other defenses that it may have in response to Plaintiff's claims and/or causes of action. Liberty Mutual reserves each of its rights and defenses under the Policy and further reserves its right to amend its Answer or supplement its Affirmative Defenses in

accordance with any additional information obtained during the course of discovery or otherwise during this litigation.

## TWELFTH SEPARATE DEFENSE

Liberty Mutual reserves all of their rights and defenses under the Policy and further reserves its right to amend the Answer or supplement their Affirmative Defenses in accordance with any additional information developed over the course of discovery or otherwise in this litigation.

## THIRTEENTH SEPARATE DEFENSE

To the extent Plaintiff relies upon, attempts to interpret, or otherwise refers to any particular document(s) identified or described, in part or in whole, within the Complaint, said document(s) speaks for itself, and, accordingly, Liberty Mutual rely upon the entire document(s) to set forth the terms, conditions and contents of the document(s).

**WHEREFORE**, Defendant Liberty Mutual Fire Insurance Company respectfully prays for judgment from this Honorable Court as follows:

1. Dismissing all claims against Liberty Mutual in this action with prejudice and with costs and disbursements; and

2. Granting Liberty Mutual such other relief as this Court deems just and proper.

Dated: September 10, 2024　　　　　**FINAZZO COSSOLINI O'LEARY MEOLA & HAGER, LLC**

By: */s/ Brandon L. Sipple*
　　JEREMIAH L. O'LEARY, ESQ.
　　BRANDON L. SIPPLE, ESQ.
　　5 Penn Plaza, 23rd Floor
　　New York, New York 10001
　　(646) 378-2033
　　　　　-and-

67 East Park Place, Suite 901
Morristown, New Jersey 07960
(973) 343-4960
jeremiah.oleary@finazzolaw.com
brandon.sipple@finazzolaw.com
*Attorneys for Defendant*
*Liberty Mutual Fire Insurance Company*

## JURY DEMAND

Pursuant to F.R.C.P. 38(b), Defendant Liberty Mutual Fire Insurance Company demands a trial by jury on all issues so triable.

Dated:  September 10, 2024              **FINAZZO COSSOLINI O'LEARY MEOLA & HAGER, LLC**

By:  */s/ Brandon L. Sipple*
JEREMIAH L. O'LEARY, ESQ.
BRANDON L. SIPPLE, ESQ.
5 Penn Plaza, 23rd Floor
New York, New York 10001
(646) 378-2033
     -and-
67 East Park Place, Suite 901
Morristown, New Jersey 07960
(973) 343-4960
jeremiah.oleary@finazzolaw.com
brandon.sipple@finazzolaw.com
*Attorneys for Defendant*
*Liberty Mutual Fire Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of September 2024, I caused a true and complete copy of the annexed Answer, Separate Defenses, and Jury Demand to be electronically filed with the Clerk of the Court, United States District Court for the Southern District of New York, and that a copy of same was served via electronic filing upon the following counsel of record:

Joshua L. Mallin, Esq.
Dennis T. D'Antonio, Esq.
James Diven, Esq.
**WEG AND MYERS, P.C.**
800 Westchester Avenue, Suite N-513
Rye Brook, New York 10573
(212) 227-4210
jmallin@wegandmyers.com
ddantonio@wegandmyers.com
jdiven@wegandmyers.com
*Attorneys for Plaintiff*

                                                           */s/ Brandon L. Sipple*
                                                           BRANDON L. SIPPLE, ESQ.